UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CLAUDETTE PAYNE,

Plaintiff,

DECISION AND ORDER

05-CV-6224L

v.

BRINKS, INC.,
MICHAEL POLIDORI, Individually
and in their official capacities,
GEOFFREY LATTA, Individually
and in their official capacities,

Defendants.

---

Plaintiff Claudette Payne ("Payne") brings this action alleging discrimination in employment on the basis of race and gender against her former employer, Brink's, Inc. ("Brink's), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Brink's now moves for summary judgment. For the reasons that follow, that motion is granted and the complaint is dismissed.[1]

Brink's is engaged in the business of transporting, protecting and storing valuables. Plaintiff was hired by Brink's Rochester Branch on November 8, 1999 as a cashier, and remained in that

---

[1] Brink's motion seeks dismissal of the complaint as against itself and employee Geoffrey Latta. Because the record has been fully developed and plaintiff has failed to raise a material issue of fact which would preclude summary judgment as to any defendant, the Court, *sua sponte,* also grants summary judgment as to the non-moving defendant, Michael Polidori. *See generally, Travelers Casualty and Surety Co. v. Gerling Global Reinsurance Corp.,* 419 F.3d 181, 190 (2d Cir. 2005).

position throughout her employment. The work area in the Rochester Branch is divided into two main locations: the "Currency Room" and the "Vault." Cashiers work primarily in the Vault and are responsible for ensuring that its balances are correct, and that all shipments of coin or currency are properly checked in and out of the Vault during the day. Although cashiers are required by Brink's policy to obtain a license to carry a firearm and undergo related training by Brink's, plaintiff was told that it was not necessary for her to do so.

In April of 2002, Rochester Branch Manager Michael Polidori ("Polidori") was terminated by Brink's for failing to appropriately address a harassment claim by a Hispanic male employee, failure to address "licensing issues," and failure to reduce internal operating costs at the Branch. Polidori was replaced as Branch Manager by Geoffrey Latta ("Latta").

During her employment, plaintiff received a Handbook, regularly distributed by Brink's, containing a written anti-discrimination and anti-harassment policy. Brink's also publicizes and provides employees with complaint forms for its "Direct Access" procedure, a means by which employees may file complaints of any nature directly with Brink's Senior Vice President of Human Resources, for investigation. Brink's hosts periodic "Speak-Out Sessions" at each branch, at which employees may present questions, comments or problems directly to Branch management.

Throughout her employment, plaintiff made periodic verbal complaints to Polidori and then to Latta, as well as to Human Resources officer Michael Sica ("Sica") and Regional Manager Tim Mesmer ("Mesmer") about difficulties with her coworkers, primarily involving their use of offensive language. Following Payne's complaints, Branch management met with the employees on at least two occasions to discuss and reaffirm Brink's anti-discrimination and anti-harassment policies. On

May 8, 2003, Sica met with plaintiff to follow up on complaints she had made to him in early 2003 concerning profanity and sexual remarks Sica testified that plaintiff indicated that she was satisfied that her concerns had been addressed and resolved. Plaintiff disputes this, and alleges that she told Sica that things had improved for a time, but that her coworkers had eventually returned to using profanity with one another, within earshot of plaintiff.

In 2004, one of the cashiers retired, leaving three cashiers, including plaintiff, at the Branch. Because the Branch was seeking to cut costs, Latta made no effort to replace the cashier who had departed. Latta also reduced the hours of each of the remaining cashiers by one hour per day. Overtime was still required on occasion; however, plaintiff contends that overtime opportunities were seldom offered to her. Brink's alleges that this was because the additional time usually included opening or closing duties requiring the carrying of a firearm, which plaintiff was unable to do until at least May of 2005, when she obtained the requisite license.

To further reduce costs at the Branch, Sica consulted with Latta, and requested data on the qualifications and job duties of each of the remaining cashiers at the Rochester Branch, including plaintiff, with the goal of eliminating one additional position. In listing and comparing the duties of plaintiff and the other two cashiers (both of whom were white males and had been hired 14 and 19 months subsequent to plaintiff, to replace cashiers who had left), Latta and Sica determined that plaintiff was the only employee whose job functions could be entirely absorbed and performed by each of the others, without any additional training. Accordingly, plaintiff's employment with Brink's was terminated on May 23, 2003. Plaintiff's duties were reassigned to the remaining cashiers, and no additional cashiers were hired thereafter.

On October 27, 2003, plaintiff filed a discrimination complaint with the EEOC and NYSDHR, alleging discrimination and retaliation on the basis of gender. Upon receipt of a probable cause letter, plaintiff filed the instant action on May 6, 2005, alleging discrimination (hostile work environment) and retaliation on the basis of gender, and also adding discrimination and retaliation claims based on her race.

## DISCUSSION

### I. Summary Judgment in Discrimination Cases

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, a common component of discrimination actions, *see Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988); *Montana v. First Federal Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir.1989), "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985) (summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000), *quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993) (trial courts should not "treat discrimination differently from other ultimate questions of fact").

Payne's claims of employment discrimination pursuant to Title VII are subject to the burden-shifting analysis articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, plaintiff must establish a *prima facie* case of discrimination by demonstrating: (1) membership in a protected class; (2) satisfactory job performance; and (3) an adverse employment action, occurring under (4) circumstances giving rise to an inference of discrimination. *See Collins v. New York City Transit Authority*, 305 F.3d 113, 118 (2d Cir. 2002). Once plaintiff has established a *prima facie* case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The burden then returns to plaintiff, to supply evidence that the legitimate, nondiscriminatory reason offered by the defendant is a pretext. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 508 (1993).

While granting Payne the liberal interpretation and favorable inferences due to her as a nonmovant, I find that Payne has nonetheless failed to establish a *prima facie* case of discrimination.

**A. Payne's Title VII Discrimination and Retaliation Claims Based on Race**

It is undisputed that plaintiff never filed an administrative charge concerning the race-based discrimination claims she now raises, nor does her complaint of gender-based discrimination contain any allegations that could be construed as "reasonably related" to her race-based claims. Accordingly, plaintiff's race-based discrimination claims must be dismissed. *See Hawkins v. Wegmans Food Market*, 2007 U.S. App. LEXIS 12014 at *3 (2d Cir. 2007) (unexhausted race and age discrimination claims are not "reasonably related" to gender and disability discrimination claims

recited in plaintiff's EEOC filing, and therefore must be dismissed), *citing Williams v. New York City Housing Auth.*, 458 F.3d 67, 70 (2d Cir. 2006).

**B. Payne's Title VII Discrimination and Retaliation Claims Based on Gender**

Payne alleges that Brink's subjected her to gender-based discrimination and retaliation in the form of: (1) discriminatory and/or retaliatory elimination of her position; (2) failure to promote her to a messenger position; (3) failure to provide Currency Room training, firearms training and other training; and (4) hostile work environment.

With respect to Payne's claim that her position was selected for elimination due to discriminatory or retaliatory animus, there is no evidence that Brink's acted with such motives. It is undisputed that the Rochester Branch needed to reduce costs: indeed, Brink's termination of Payne's initial Branch Manager, Polidori, was largely due to his failure to reduce internal costs at the Branch. All of the cashiers had undergone a reduction in hours shortly before plaintiff's position was eliminated, and after the elimination of the position, no replacement cashier was hired. Sica and Latta testified that Payne was specifically selected for termination solely because she was the only cashier whose duties could be absorbed by the others without additional training. Although plaintiff alleges that Latta's description of her duties should have been more expansive, and that she could have assumed the duties of another cashier with *minimal* additional training, plaintiff does not dispute that hers was the position that could be most easily absorbed by the remaining staff, in that the other two cashiers were already qualified and trained to perform all of duties she performed. *See DeLuca v. Allied Domecq Quick Service Restaurants*, 2006 U.S. Dist. LEXIS 39261 at *27 (E.D.N.Y. 2006) (an employer may undertake an adverse employment action "for a good reason, a

bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason").

It is undisputed that plaintiff was the cashier with the most seniority. However, even if this fact were sufficient to give rise to an inference of discrimination, plaintiff nonetheless fails to demonstrate that Brink's legitimate, nondiscriminatory reason for eliminating her position was pretextual, since it is undisputed that Brink's had no policy or practice favoring the retention of more senior employees. *See Campbell v. Daytop Village, Inc.*, 1999 U.S. Dist. LEXIS 6943 (S.D.N.Y. 1999) (defendant's promotion of employee with less seniority than plaintiff is insufficient to establish pretext, where it is undisputed that qualifications and experiences, and not seniority, were the factors considered in selecting a candidate for promotion). *See generally Norville v. Staten Island University Hospital*, 196 F.3d 89, 97 (2d Cir. 1999) (although employer's deviation from its standard reliance on seniority principles is sufficient to establish a *prima facie* discrimination case, such deviation is insufficient to prove pretext); *Bucknell v. Refined Sugars, Inc.*, 82 F. Supp. 2d 151, 158 (S.D.N.Y. 2000) (same). Accordingly, plaintiff has failed to allege circumstances giving rise to an inference of discrimination sufficient to establish a *prima facie* case, and plaintiff's discrimination and retaliation claims related to the elimination of her position must be dismissed.[2]

Plaintiff also alleges that she was denied the opportunity for a "promotion" to a messenger position. However, plaintiff offers no evidence that any such openings existed or that she applied or was qualified to be a messenger. In any event, it is undisputed that a messenger position would

---

[2] Moreover, even assuming *arguendo* that plaintiff had established a *prima facie* case of discrimination related to the elimination of her position, she has failed to come forth with sufficient evidence to demonstrate that Brink's legitimate, non-discriminatory reason for her termination was pretextual.

have resulted in reduced pay, and would have been considered a demotion from plaintiff's position as cashier. As such, Payne's "failure to promote" claim must be dismissed.

Payne also contends that she repeatedly requested, and was denied, training to work in the Currency Room, and was not afforded as many overtime opportunities as the other two cashiers, both of whom are male. Assuming *arguendo* that these circumstances are sufficient to comprise an adverse employment action, Brink's asserts that the Currency Room was always adequately staffed and that Payne's duties did not require her to receive Currency Room training: thus, there was no legitimate business reason to train her, nor did Payne's lack of Currency Room training adversely impact her ability to perform the requirements of her cashier position. Brink's also attests that the overtime opportunities to which Payne refers usually included opening and closing duties, neither of which Payne was able to perform because she lacked the necessary firearms certification until shortly before her position was eliminated, and never completed Brink's internal weapons training program. Payne does not dispute either of Brink's legitimate, nondiscriminatory reasons for not training her or offering her additional overtime, nor is there any other evidence to suggest that those reasons are pretextual. As such, those claims must be dismissed.

Finally, Payne claims that she was subjected to a hostile work environment. In order to prevail on a claim that unlawful harassment has caused a hostile work environment in violation of Title VII, a plaintiff must demonstrate that her workplace was permeated with "discriminatory intimidation, ridicule, and insult ... sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and show a specific basis for imputing the conduct that created the hostile work environment to her employer. *Harris v. Forklift*

*Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). *See also Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003); *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002); *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997).

Nonetheless, "Title VII is not a 'general civility code.'" *Bickerstaff v. Vassar College*, 196 F.3d 435, 452 (2d Cir. 1999) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). Although offensive language need not be directed toward a plaintiff in order to contribute to a hostile work environment, *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997), a few isolated incidents of "boorish or offensive use of language," particularly when heard "second-hand," are generally insufficient to establish a hostile work environment. *Benette v. Cinemark U.S.A., Inc.*, 2003 U.S. Dist. LEXIS 22636 at *18 (W.D.N.Y. 2003). *See also Clark County School District v. Breeden*, 532 U.S. 268, 270 (2001) (conduct must be severely threatening or humiliating to rise to the level of a hostile work environment); *Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 62 (2d Cir. 1992) ("incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief").

During her three-year tenure at Brink's, Payne complained to Brink's that: (1) on numerous occasions she had overheard other employees swearing, including using the "f-word" to one another; (2) on 8-12 occasions, she overheard other employees discussing women's breasts, menstrual periods, or the frequency and quality of sex with their girlfriends, including references to their girlfriends or other women as "bitches," and on one occasion, "whore"; (3) she once overheard a Caucasian coworker call another Caucasian coworker "ghetto trash," which she interpreted as a demeaning term implicating African-Americans; (4) coworkers turned down the thermostat even

though Payne had told them she preferred a warmer temperature; (5) coworkers did not include Payne when ordering out lunch as a group; (6) coworkers in the Currency Room played loud music, and refused to keep the door to the Vault closed to prevent Payne from overhearing their music and/or profanity; and (7) upon return from a leave, Payne was told by a coworker that Polidori had referred to her using an unspecified "racial term." Payne concedes that she also used mild curse words in the workplace from time to time. Although Payne relies upon the testimony of Charles Halm, a former Brink's employee, as evidence that plaintiff's coworkers made derogatory comments directly to her, Payne herself does not recall those incidents, and never complained to Brink's about any comments being made to her.

Considering the totality of the circumstances, the 8-12 incidents of offensive language plaintiff describes having overheard, as well as the minor employee disagreements over music volume and temperature control to which she refers, do not rise to the level of a hostile work environment. Indeed, Payne testified that she had "loved" her job at Brink's.

Accordingly, Payne has failed to establish a *prima facie* case of discrimination in the form of a hostile work environment, and that claim must be dismissed.

**CONCLUSION**

______For the foregoing reasons, defendants' motion for summary judgment (Dkt. #23) is granted and plaintiff's complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
October 17, 2007.